**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**AT OWENSBORO**
**CIVIL ACTION NO. 4:26CV-P27-JHM**

CORNELIUS FONTANE HARRIS                                                    PLAINTIFF

v.

DEPUTY PECK *et al.*                                                        DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

Plaintiff Cornelius Fontane Harris filed the instant *pro se* prisoner 42 U.S.C. § 1983 action. The complaint is now before the Court for initial screening pursuant to 28 U.S.C. § 1915A. For the reasons stated below, the Court will dismiss some claims and allow other claims to proceed for further development.

**I. SUMMARY OF FACTUAL ALLEGATIONS**

Plaintiff, a convicted inmate at Daviess County Detention Center (DCDC), sues DCDC corrections officers Deputy Peck and Sergeant[1] Clark in their individual and official capacities. Plaintiff states that on December 31, 2025, he was housed at DCDC when Deputy Peck came to his cell to conduct head count. He asserts the following occurred:

> There was an inmate in the shower and Deputy Peck told the inmate to get out of the shower or cover up and step out and that he wouldn't start head count until inmate done so. The inmates in cell C-104 then became unruly and the inmate in the shower stepped out with a towel wrapped around him. Deputy Peck then told the cell to, "Shut the fu\*\* up." In which I respond, "You can talk to us and respect us as grown men." Deputy Peck then told me to pack my things because he was taking me to isolation for rule infraction. I responded, "For what? I didn't do nothing." He then told me to "cuff up" and placed me in handcuffs and proceeded to escort me from Cell C-104 to isolation. While being escorted in the hallway we encountered Sergeant Clark who I knew to be the shifts supervisor. I pled my case to him that I'd done nothing wrong in which he responded, "It's about time they got you. I hate your whole cell and I hope you get 30 days in the hole." I then yelled profanities at him at him as Deputy Peck led me on towards isolation.

---

[1] Plaintiff spells "sergeant" as "sergent" and "sargent" in his complaint. The Court will use the correct spelling "sergeant" herein.

Deputy Peck then told me to, "Shut my fu\*\*in trap and quit yelling." Sergeant Clark then said, "If he yell again, take him down." In which Deputy Peck slammed me to the ground causing me to hit my head and side of my face as well as bruised my wrist due to me being in handcuffs he then placed his knee in my back and told me to shut up. He then was assisted in bringing to my feet and continued to escort me to isolation as I still yelled in a effort to draw attention to the situation. Deputy Peck then shoved me against the wall and pushed my face against the wall several times inflicting pain. He then pulled his pepper spray in an attempt to spray me and said, "if you don't shut up I'm going to spray you in the face." Sergeant Clark then finally intervened telling him he can't do that. Deputy Hedges then assisted Deputy Peck in escorting me to isolation cell B-131.

Plaintiff alleges his rights under the First, Fifth, Eighth, and Fourteenth Amendments were violated by Defendant Peck "when he used excessive force in response to the content of my speech and by Sergeant Clark when he failed to stop Deputy Peck but yet directed and encouraged the excessive force as well as making a retaliation statement." Plaintiff states that Deputy Peck continues to work in Plaintiff's unit and that he filed a grievance but that he "has yet to hear if anything has been done for their actions." He states that he is "fearful and paranoid" on days that Deputy Peck works in the jail. He states that Defendant Peck's superior "failed to properly train him on how to handle situations involving inmates in deescalating disputes."

As relief, Plaintiff seeks compensatory and punitive damages.

## II. STANDARD

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the complaint, or any portion of it, if the court determines that the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* § 1915A(b)(1), (2); *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).

2

In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)).  "But the district court need not accept a 'bare assertion of legal conclusions.'"  *Tackett*, 561 F.3d at 488 (quoting *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)).  Although this Court recognizes that *pro se* pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), "[o]ur duty to be 'less stringent' with pro se complaints does not require us to conjure up unpled allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted).

### III. ANALYSIS

### *A. Official-capacity claims*

"Official-capacity suits . . . 'generally represent [] another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978)).  Therefore, Plaintiff's official-capacity claims against Defendants Peck and Clark are actually brought against their employer, Daviess County.  *Id*. at 165.

When a § 1983 claim is made against a municipality or county, this Court must analyze two distinct issues:  (1) whether Plaintiff's harm was caused by a constitutional violation; and (2) if so, whether the municipality is responsible for that violation.  *Collins v. City of Harker Heights,*

*Tex.*, 503 U.S. 115, 120 (1992).  In regard to the second component, a municipality cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation.  *Monell*, 436 U.S. at 691; *Deaton v. Montgomery Cnty., Ohio*, 989 F.2d 885, 889 (6th Cir. 1993).  To demonstrate municipal liability, a plaintiff "must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy." *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003) (citing *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)).  The policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983." *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994) (quoting *Polk Cnty. v. Dodson*, 454 U.S. 312, 326 (1981) (citation omitted)).

Plaintiff does not allege that any of the actions taken against him occurred pursuant to a policy or custom of Daviess County.  A plaintiff could allege an unlawful policy or custom by showing a policy of inadequate training or supervision.  *See City of Canton v. Harris*, 489 U.S. 378, 387 (1989).  However, a "failure-to-train claim requires a showing of prior instances of unconstitutional conduct demonstrating that the municipality had ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013); *see also R.L. v Knox Cnty.*, No. 24-5002, 2024 U.S. App. LEXIS 28458 (6th Cir. Nov. 6, 2024).

Plaintiff has not alleged prior instances of unconstitutional conduct that would have put Daviess County clearly on notice that training in the particular areas described by Plaintiff were deficient and likely to cause injury.  Thus, the Court will dismiss Plaintiff's official-capacity claims for failure to state a claim upon which relief may be granted for these reasons as well.

4

### B. Individual-capacity claims

#### 1. Eighth Amendment

Upon review, the Court will allow Plaintiff's excessive force claims under the Eighth Amendment to proceed against Defendants Peck and Clark in their individual capacities and will allow his failure-to-protect claim under the Eighth Amendment to proceed against Defendant Clark in his individual capacity.

#### 2. First Amendment

Plaintiff also alleges retaliation. Retaliation for the exercise of a constitutional right is itself a violation of the First Amendment actionable under § 1983. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc) (per curiam). In order to state a retaliation claim, a plaintiff must show that: (1) he engaged in constitutionally protected conduct, (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct, and (3) there is a causal connection between elements (1) and (2), meaning that the adverse action was motivated at least in part by the plaintiff's protected conduct. *King v. Zamiara*, 680 F.3d 686, 694 (6th Cir. 2012) (citing *Thaddeus-X*, 175 F.3d at 394).

The Court construes Plaintiff's retaliation claim to be based on Defendant Peck's removal of him to isolation for Plaintiff stating, "You can talk to us and respect us as grown men[,]" after Defendant Peck was verbally abusive to the inmates in Plaintiff's cell. Upon review, the Court will allow this retaliation claim to proceed for further development against Defendant Peck in his individual capacity.

However, to the extent Plaintiff is also alleging retaliation based on force used against him during his walk to the isolation cell, Plaintiff concedes in the complaint that he "yelled profanities" at officers before the alleged force was taken. "A prisoner's behavior in violation of prison

5

regulations, including insolence, is not 'protected conduct' under the First Amendment." *Lewis v. Grabowski*, No. 18-CV-13530, 2019 U.S. Dist. LEXIS 28021, at *5 (E.D. Mich. Feb. 22, 2019) (dismissing retaliation claim on initial review where inmate was in violation of prison rules); *see also Lockett v. Suardini*, 526 F.3d 866, 868, 874 (6th Cir. 2008) (finding prisoner's use of "angry and crude language" was insolent behavior and not protected conduct to support a retaliation claim) (collecting cases).  Upon review, the Court finds that Plaintiff has not shown that he engaged in protected conduct to satisfy the elements of a retaliation claim.  Therefore, Plaintiff's retaliation claim based on actions taken after he admittedly began yelling profanities at officers will be dismissed for failure to state a claim upon which relief may be granted.

### 3. Fifth Amendment

Plaintiff also alleges a violation of the Fifth Amendment.  However, he fails to explain how the Fifth Amendment applies to his claims.  Based on the facts as alleged by Plaintiff, the Court finds that Plaintiff does not have a cognizable Fifth Amendment claim against Defendants. Specifically, the Court notes that to the extent Plaintiff is attempting to rely on the Due Process Clause of the Fifth Amendment, it applies only to the actions of the federal government.  *See, e.g.*, *Sturgell v. Creasy*, 640 F.2d 843, 850 (6th Cir. 1981); *Walker v. Hughes*, 558 F.2d 1247, 1257 (6th Cir. 1977).  Here, the actions of federal officials are not at issue, and the Court will dismiss the Fifth Amendment claims for failure to state a claim.

### 4. Fourteenth Amendment

The Court also cannot discern a Fourteenth Amendment claim based on the allegations.  A pretrial detainee is protected from cruel and unusual punishment under the Due Process Clause of the Fourteenth Amendment while the Eighth Amendment is the source of protection for a convicted inmate.  *Richmond v. Huq*, 885 F.3d 928, 937 (6th Cir. 2018).  Because Plaintiff was a

convicted inmate at the time of the alleged events, the Eighth Amendment applies to Plaintiff's excessive force claims, and the Fourteenth Amendment claim must be dismissed for failure to state a claim upon which relief may be granted.

In as much as Plaintiff is alleging a Fourteenth Amendment claim based on the handling of his grievance, prisoners do not have a constitutional right to a prison grievance procedure. *See Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005) ("All circuits to consider this issue have . . . found that there is no constitutionally protected due process right to unfettered access to prison grievance procedures."). Consequently, "a plaintiff cannot premise a § 1983 claim on allegations that a jail's grievance procedure was inadequate and/or unresponsive because there is no inherent constitutional right to an effective jail grievance procedure in the first place." *Olivier v. City of Clarksville*, No. 3:16-CV-03306, 2017 U.S. Dist. LEXIS 24779, at *7-8 (M.D. Tenn. Feb. 21, 2017). Therefore, any claim based on the handling of Plaintiff's grievance must also be dismissed for failure to state a claim upon which relief may be granted.

### IV. CONCLUSION

For the reasons set forth herein, and the Court being otherwise sufficiently advised,

**IT IS ORDERED** that Plaintiff's official-capacity claims against Defendants; his retaliation claim based on actions occurring after he yelled profanities at officers; and his claims under the Fifth and Fourteenth Amendments are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

8

The Court will enter a separate Service and Scheduling Order to govern the claims that have been permitted to proceed. In allowing the claims to proceed, the Court passes no judgment on their merit or ultimate outcome.

Date:   May 28, 2026

Joseph H. McKinley Jr., Senior Judge
United States District Court

cc:   Plaintiff, *pro se*
       Defendants
       Daviess County Attorney
4414.010

8